IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| GREGORY GIBSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-08-3424 |
| MARJACK COMPANY, INC., | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Currently pending before the Court are Defendant's Motion for Summary Judgment (Doc. No. 27) and Plaintiff's Motion to Extend the Deadline to File an Opposition (Doc. No. 28).[1] The Court has reviewed the entire record, including the pleadings and exhibits, with respect to the instant motions. The issues have been briefed, and no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated below, the Court will GRANT Defendant's Motion for Summary Judgment and GRANT Plaintiff's Motion to Extend.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from the termination of Gregory Gibson ("Gibson") by Marjack Co., Inc. ("Marjack"). From November 13, 2005 to November 4, 2006 Marjack employed Gibson in its Landover, Maryland distribution center. Gibson worked under the supervision of Lori Park, the Landover branch manager, and Carl Booker, the assistant warehouse manager.

---

[1] The Court finds that the Plaintiff has adequately demonstrated a need for additional time to prepare an Opposition to the Defendant's Motion for Summary Judgment, and accordingly grants Plaintiff's Motion to Extend the Deadline to File an Opposition to Defendant's Motion for Summary Judgment.

Marjack's Human Resources ("HR") Department consisted of Pamela Paladino, Vice President of HR and Operations, and Jennifer Howerton, HR Manager. As HR Manager, Howerton implemented the employee referral bonus program. To receive a bonus for referring a new employee, the referring employee filled out and submitted a form to Howerton. After the new employee had worked at Marjack for ninety days, the referring employee would then remind Howerton to process the bonus. Gibson became familiar with the bonus claiming procedure when he referred Christopher Morgan to Marjack. In August 2006 Marjack hired Kizzie Brown to work in the Landover warehouse. Gibson claimed to have referred Brown, an acquaintance. Paladino, Howerton, and Park, however, deny knowing that Gibson referred her, and he never received a bonus for referring Brown.

In mid-August 2006 Brown told Gibson that Ebenezer Josiah, a supervisor, was sexually harassing her. Although Gibson never reported the sexual harassment allegation to the HR Department or the Executive Team, he claimed to have informed Booker of the harassment. Marjack discharged Booker in mid-August 2006 for poor performance. Brown herself complained to Booker immediately after Josiah had sexually harassed her, but Booker admitted in an internal investigation that he did not notify the HR Department because he thought he could control Josiah. In September 2006, Brown filed an Equal Employment Opportunity Commission ("EEOC") complaint against Marjack alleging sexual harassment. Gibson repeated Brown's complaints to the EEOC investigator and added that he had witnessed the harassment.

The Marjack HR Department and the Executive Team first learned about the sexual harassment allegations on September 22, 2006, after Brown and Latresa Peoples finally complained to Lori Park. Park informed the HR Department of the harassment allegations and Marjack hired Eagles 3 LLC ("Eagles 3") to investigate the allegations. Eagles 3 interviewed

Marjack employees from October 9 to October 13, 2006 and generated a final report, which contained no reference to Gibson, other than listing him as an interviewed employee.

On November 3, 2006, an unnamed employee found invoices in a warehouse trashcan. Since Marjack did not usually discard invoices, the employee gave them to Alison Brunner, the inventory control manager and internal auditor, and also Josiah's wife. Based on the document history of the invoices, Brunner determined that Gibson had modified and deleted invoices on September 27, 2006. Gibson had a username and password for accessing the computer system, but Marjack never issued him an authorization code for deleting invoices. Concerned, Brunner reported Gibson's activities to Paladino. Paladino then discovered that Stephanie Bracey, the customer service manager, had given Gibson her code to delete certain invoices, but had not authorized him to modify any others.

Paladino discharged Gibson the next day, citing Marjack's official termination reason as mismanagement of company invoices. When questioned, Gibson became belligerent, but did not explain or deny his modification of the invoices. Paladino and Gibson agree that Park and Bracey had directed him to delete the invoices and that Bracey had given him her authorization code. Paladino, however, maintains that no one directed Gibson to modify the invoices before deleting them.

On February 15, 2007, Gibson filed an EEOC complaint alleging that Marjack retaliated against him for participating in a protected activity, in violation of § 704(a) of Title VII of the Civil Rights Act of 1964. The Baltimore EEOC Director found that Marjack violated § 704(a). On December 19, 2007, Gibson filed a Complaint with this Court against Marjack alleging retaliation. Now pending is Marjack's Motion for Summary Judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where evidence in the record "shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). In a motion for summary judgment, the moving party satisfies its burden by showing an absence of evidence to support the nonmoving party's case. *See Celotex*, 477 U.S. at 325 (1986). The court must "draw all justifiable interferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330-331 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## III. ANALYSIS

Marjack seeks summary judgment on the grounds that (1) Gibson did not engage in activities protected by Title VII of the Civil Rights Act of 1964 and (2) Marjack had a legitimate nondiscriminatory reason for discharging Gibson. In response, Gibson asserts that (1) he did engage in protected activities, and (2) Marjack's reason for firing him was a mere pretext for retaliation. To make out a successful case of retaliation under Title VII, an employee must establish a *prima facie* case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once an employee makes out a *prima facie* case, the employer bears the burden of producing a

legitimate nondiscriminatory reason for the adverse employment action. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). The employee then bears the burden of showing, by a preponderance of the evidence, that the employer's stated rationale is a pretext for retaliation. *Id.* at 253. The Court finds that Gibson fails to establish a *prima facie* case of retaliation and fails to show that Marjack's legitimate nondiscriminatory termination reason was a pretext for retaliation.

1. ***Prima Facie* Case**

To make out a *prima facie* case of retaliation under § 704(a), the plaintiff must prove: (1) the employee participated in or opposed an activity protected by § 704(a); (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the employee's protected activity and the employer's adverse employment action. *See McDonnell Douglas Corp.*, 411 U.S. at 802.

**A. Protected Activities**

Section 704(a) of Title VII provides that employers may not discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter" or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-(3)(a). Protected activities fall into two categories: participation and opposition. *See* 42 U.S.C. § 2000e-3(a). Section 704(a) limits activities that constitute participation to making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. *Id.*; *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 258-59 (4th Cir. 1998) (emphasizing that the participation clause protects only ongoing Title VII investigations); *see e.g.*, *Barnes v. Small*, 840 F.2d 972, 976 (D.C. Cir. 1988) (holding that the participation clause

5

protects an employee who wrote letters for another employee's Title VII proceeding); *Smith v. Georgia*, 684 F.2d 729, 730 (11th Cir. 1982) (recognizing that the participation clause protects a witness who testifies on behalf of a co-worker at an EEOC investigation). In contrast, the opposition clause protects a wide range of activities, including unofficial protests and the use of informal grievance procedures. *See Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 754 (4th Cir. 1996) (holding that the opposition clause protects an employee's complaints to his employer); *Armstrong v. Index J. Co.*, 647 F.2d 441, 448 (4th Cir. 1981) (holding that the opposition clause protects the use of an employer's informal grievance procedures); *but see Laughlin*, 149 F.3d at 260 (holding that the opposition clause does not protect a secretary's removal and mailing of confidential documents from her employer's desk). Thus, an employee's comments to an employer complaining about discriminatory practices also constitute opposition under § 704(a). *Crawford v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 129 S. Ct. 846, 850 (2009).

Marjack correctly argues that Gibson's referral of Brown to Marjack as an employee is not a protected activity. The plain language of § 704(a) limits protected activities to a distinct few activities: opposing an unlawful employment practice; making a charge; testifying; assisting; or participating in a Title VII investigation. *See* 42 U.S.C.A. § 2000e-3(a). Referring a person for employment is not protected under § 704(a). Accordingly, Gibson's referral of Brown is not a protected activity.

However, the Court disagrees with Marjack's contention that Gibson's referral of Brown for a job was his sole protected activity. Gibson engaged in protected activities when (1) he informed Booker of Brown's sexual harassment allegations, (2) interviewed with Eagles 3, and (3) participated in Brown's EEOC investigation. (Doc. No. 30 at 12-13.) First, since the opposition clause protects a broad range of unofficial protests, including making informal

6

complaints, it protects Gibson's comments to Booker about Brown's sexual harassment allegations. *See Laughlin*, 149 F.3d at 259. Second, while the participation clause does not protect Gibson's interview with Eagles 3 because it was only an internal investigation and not a Title VII proceeding, Gibson's interview is nonetheless protected by the opposition clause. *See* 42 U.S.C. § 2000e-3(a). His participation in the Eagles 3 interview falls under the protection of the opposition clause because opposition encompasses scenarios where employees voice their opinions about an employer's discriminatory employment activities. *See Laughlin*, 149 F.3d at 259. Third, because § 704(a) defines participation as testifying, assisting, or participating in another person's Title VII investigation, it clearly protects Gibson's involvement in Brown's EEOC investigation. *See* 42 U.S.C. § 2000e-3(a). Accordingly, Gibson's comments to Booker, his interview with Eagles 3, and his participation in Brown's EEOC complaint are all activities protected by § 704(a).

### B. Adverse Employment Action

The Court agrees that Gibson suffered an adverse employment action when Marjack discharged him. To show an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (citations and quotations omitted). The Fourth Circuit recognizes termination as an adverse employment action. *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 755 (4th Cir. 1997). Since being terminated is an adverse employment action that a reasonable employee may view as materially adverse, Gibson has established that he suffered an adverse employment action.

### C. Causal Connection

The Court agrees with Marjack that Gibson fails to establish a causal connection between his involvement in protected activities and Marjack's subsequent termination of his employment. To establish a causal connection between a protected activity and an adverse action, a plaintiff must prove that the protected activity preceded the adverse action and that the employer knew the employee engaged in a protected activity. *Causey v. Balog*, 162 F.3d 795, 803-04 (4th Cir. 1998) (stating that "[k]nowledge of a charge is essential to a retaliation claim"); *Dowe v. Total Action against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (explaining that "[s]ince, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the *prima facie* case.").

Because Marjack discharged Gibson in November, after he had participated in Kizzie Brown's EEOC investigation in September, complained to Booker about sexual harassment in September, and interviewed with Eagles 3 in October, Gibson establishes that he engaged in protected activities before Marjack discharged him in November.

However, Gibson fails to show that Paladino, the employer responsible for discharging him, knew about his involvement in the protected activities. Specifically, Gibson fails to show that Paladino knew of his informal complaints to Booker, the subject of his interview with Eagles 3, or his participation in Brown's EEOC investigation. (Doc. No. 27, Attach. A ¶¶ 16, 20.) Gibson provides no evidence that Marjack's HR Department or Executive Team knew about his undocumented complaints to Booker. In fact, Booker admitted that he did not inform any HR or Executive Team personnel about allegations of sexual harassment. (Doc. No. 30, Ex. 8 at 10).

Since Gibson cannot prove that Marjack knew about his complaints to Booker, he fails to establish a *prima facie* case of retaliation for this protected activity.

Gibson also fails to show that Marjack retaliated against him for cooperating with the Eagles 3 investigation. Paladino, who made the decision to discharge Gibson, specifically denied knowledge of Gibson's role in the Eagles 3 investigation, stating, "I do not know what Mr. Gibson told the investigators." (Doc. No. 27, Attach. A ¶ 23.) Moreover, nothing in the final report generated by Eagles 3 implicated Gibson in any way, except that his name was listed as an interviewed employee. (Doc. No. 30, Ex. 8 at 6.) Since Gibson fails to show that Marjack knew what he said to Eagles 3, he fails to establish this prong of the *prima facie* case of retaliation for his cooperation with the external investigators.

Gibson asks this Court to infer that Paladino knew about his complaints to Booker, even though Booker admitted that he told no Marjack HR or Executive Team personnel about the sexual harassment complaints, and Paladino specifically denied knowledge of Gibson's involvement. (Doc. No. 27, Attach. A ¶ 20; Doc. No. 30, Ex. 8 at 10.) Although Gibson admits that Paladino made the decision to discharge him, he insinuates, with no support, that other people influenced her decision to terminate him. (Doc. No. 27, Attach. E at 51.) In particular, he intimates that Brunner, Josiah's wife, "is known to be vindictive," had the capability to "doctor" the invoices to implicate Gibson, and wanted to retaliate against him for having reported her husband's harassment of Brown. (Doc. No. 30 at 18.) Even if Brunner did influence Paladino's decision, Gibson's claim would nonetheless fail because the Fourth Circuit refuses to define biased subordinates with no supervisory or disciplinary authority as decision-makers for the purpose of Title VII claims, even if they substantially influenced the adverse employment decision. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 290-91

(4th Cir. 2004) ("[W]e decline to endorse a construction of the discrimination statutes that would allow a biased subordinate who has no supervisory or disciplinary authority and who does not make the final or formal employment decision to become a decision-maker simply because he had a substantial influence on the ultimate decision or because he has played a role, even a significant one, in the adverse employment decision."). Thus, even if this Court were to accept Gibson's unconfirmed speculations that other Marjack employees encouraged Paladino to discharge Gibson, Gibson's *prima facie* case would still fail because those employees are not deemed decision-makers for the purpose of a Title VII claim and Paladino made the ultimate decision to terminate him. (Doc. No. 27, Attach. A ¶ 27.)

Gibson fails to show that Marjack knew about his participation in Kizzie Brown's EEOC investigation. Not only did Marjack's HR Department and Executive Team deny knowledge before late September of any sexual harassment allegations, they also deny knowing Gibson may have played a part in the reporting or investigation. (Doc. No. 27, Attach. A ¶ 16; *id.* at Attach. B ¶¶ 13-16; *id.* at Attach. C ¶ 10; *id.* at Attach D. ¶ 13.) Since Gibson fails to show Marjack had knowledge of his participation in Brown's EEOC investigation, he fails to establish this prong of the *prima facie* case of retaliation for participating in a protected activity.

### 2. Legitimate Nondiscriminatory Reason

Even assuming *arguendo* that Gibson had established a *prima facie* case of retaliation for engaging in activities protected by Section 704(a), Gibson's claim still fails because Marjack articulated a legitimate nondiscriminatory reason for terminating him. Under the retaliation analysis, once the employee establishes a *prima facie* retaliation case, the employer bears the burden of producing a legitimate, nondiscriminatory reason for the adverse employment action alleged. *Burdine*, 450 U.S at 252-53.

The Court believes that Marjack proffered a legitimate business reason for terminating Gibson. Specifically, Marjack explains that it discharged Gibson for "modifying orders and then deleting the invoice that went with the order he had just modified" in violation of company policy. (Doc. No. 30, Ex. 9.) Violation of company policy has been recognized as a legitimate reason for terminating an employee. *Brantley v. Nationwide Mut. Ins. Co.*, No. RDB-07-1322, 2008 U.S. Dist. LEXIS 56083, at *37 (D. Md. July 22, 2008). The Court may not question a company's policy decisions. *See Jarvis v. Chimes*, No. RDB-06-1197, 2008 U.S. Dist. LEXIS 16541, at *33 (D. Md. March 4, 2008) (holding that even if the decisionmakers decided to terminate an employee on the basis of incomplete information, it is not the province of courts "to decide whether the [employer's] reason was 'wise, fair, or even correct, ultimately, so long as it truly was the reason'") (citation omitted).

Marjack does not dispute that Bracey authorized Gibson to delete certain invoices and gave him her authorization code to delete the invoices. (Doc. No. 30, Ex. 3 at 68-70; *id.* at Ex. 4 at 79.) Both parties have furnished document histories of invoices that show Gibson deleting two invoices on September 27, 2006. (Doc. No. 27, Attach. E at 22; Doc. No. 30, Ex. 14.) What is at issue is whether Marjack authorized Gibson to modify the invoices before deleting them. (Doc. No. 30, Ex. 9.) Marjack maintains that Bracey did not ask Gibson to modify invoices. (Doc. No. 30, Ex. 4 at 57.) Both parties have produced document histories of invoices that show Gibson modifying the invoices before deleting them. (Doc. No. 27, Attach. E at 22; Doc. No. 30, Ex. 14.) When questioned by Paladino, Gibson did not explain his actions to her, and he neither addressed nor denied modifying invoices. (Doc. No. 30, Ex. 4 at 77.) Since Marjack truly believed that Gibson modified invoices without permission and in violation of company

11

policy, the Court finds Marjack has satisfied its burden of producing a legitimate nondiscriminatory reason for terminating Gibson.

### 3. Pretext

Gibson fails to rebut Marjack's legitimate nondiscriminatory reason for termination by a preponderance of the evidence. Once an employer articulates a legitimate nondiscriminatory termination reason, an employee must prove, by a preponderance of evidence, that the reason proffered by the employer was actually a pretext for retaliation. *Burdine*, 450 U.S. at 253. An employee can prove pretext by offering evidence that challenges the employer's explanation for discharging him. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (holding that an employee fails to establish pretext where "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the [employee] created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."); *Vickers v. Powell*, 493 F.3d 186, 195-96 (4th Cir. 2007) (holding that an employee who "baldly asserts" that her employer lied about his reason for terminating her failed to establish pretext because she provided no evidence in support of her allegation).

Rather than pointing to specific facts that cast doubt on Marjack's proffered termination reason, Gibson relies on his own unsubstantiated speculations to assert that Paladino lied about her reason for terminating him, even though uncontroverted evidence in the record shows that Marjack legitimately terminated Gibson for mismanagement of invoices. (Doc. No. 30 at 17-18; *id.* at Ex. 14.)

Although document histories of invoices produced by both parties plainly show Gibson modifying two invoices, Gibson speculates, without providing any evidence, that other people

may have modified the invoices. (Doc. No. 27, Attach. E at 22; Doc. No. 30, Ex. 14.; *id.*, Ex. 3 at 85-88.) To establish pretext, Gibson merely hypothesizes that "somebody probably did come on my computer and did what they did," but points to no concrete evidence in the record to support his contention. (Doc. No. 30, Ex. 3 at 88.) Since Gibson offers no evidence beyond his own unsubstantiated speculations that Marjack's proffered reason for termination was actually a pretext for retaliation, he fails to establish pretext by a preponderance of the evidence.

In the absence of any evidence of a pretext for retaliation, the Court cannot find that Marjack retaliated against Gibson. Not only has Gibson failed to establish a *prima facie* case of retaliation, he fails to rebut Marjack's legitimate nondiscriminatory termination by a preponderance of the evidence. Accordingly, the Court will grant Marjack's Motion for Summary Judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court will GRANT the Defendant's Motion for Summary Judgment and GRANT the Plaintiff's Motion to Extend the Deadline. A separate Order will follow.

| June 18, 2010 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |